IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| KARLETTA VIRGINIA MOOD, | )    CIVIL ACTION NO. 9:17-1799-DCN-BM |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    **REPORT AND RECOMMENDATION** |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein she was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Civil

Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on August 29, 2013, alleging

disability beginning June 30, 2010,[1] due to a blood clot disorder, a blood disorder, anxiety, anemic

low iron, and damage to her left leg. (R.pp. 27, 172, 198). Plaintiff's claim was denied both initially

and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge

---

[1]In a previous decision dated June 29, 2010, Plaintiff was awarded a closed period of benefits from August 5, 2008 through January 12, 2010. However, it was found that as of January 12, 2010, Plaintiff was capable of performing a full range of sedentary work, and was therefore no longer entitled to disability benefits. The Appeals Council denied review of this previous decision on June 9, 2011. (R.pp. 59-70, see also R.p. 27). Plaintiff's current application seeks new benefits based on Plaintiff again becoming disabled a few weeks later.



(ALJ), which was held on November 23, 2015. (R.pp. 40-55). The ALJ thereafter denied Plaintiff's claim, finding in a decision issued on January 28, 2016, that Plaintiff was not disabled during the relevant time period (i.e., from the alleged onset date of June 30, 2010 through June 30, 2014, the date Plaintiff was last insured for DIB benefits[2]). (R.pp 27-35). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-5).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that the ALJ's decision is not supported by substantial evidence, and that this case should be reversed and remanded to the Commissioner for further proceedings. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

---

[2]In order to be eligible for DIB, Plaintiff must show that she was disabled on or before her date last insured for DIB benefits. Johnson v. Barnhart, 434 F.3d 650, 655-656 (4th Cir. 2005); see 42 U.S.C. § 423(c); 20 C.F.R. § 404.101.



evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)[Nothing that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Medical Record

Plaintiff has a history of deep vein thrombosis (DVT) and pulmonary embolism, and her medical records show that she underwent a VNUS closure procedure on her left lower extremity in July 2009. (R.pp. 364-365). As previously noted, Plaintiff was awarded disability benefits following this surgery through January 12, 2010, but was determined to no longer be disabled after that date.

On May 5, 2010, Plaintiff received follow up care from Dr. Edward Morrison of Coastal Vascular and Vein (Coastal). Examination showed no evidence of significant edema or venous distension in her legs. Plaintiff reported having lost twenty pounds and that she was feeling better, although she still had some pain in and around her anterior right thigh right before menstruation. Dr. Morrison advised Plaintiff to lose weight, as she was at high risk for DVT. He also



3

opined that it was reasonable to consider Plaintiff stopping taking Coumadin (a blood thinner) for a period of time. (R.p. 342).

On September 22, 2010 (which was now after Plaintiff alleges her condition became disabling again on June 30, 2010), Plaintiff was seen by Physician Assistant (PA) Brandy Englert at Coastal for her venous stasis disease. Plaintiff reported that she continued to have swelling and pain in her large dilated varicose vein in her left leg that extended from her foot to her thigh, and that this affected her quality of life and efficiency at work. Examination revealed that her left leg was slightly more edematous than the right with a mildly dilated varicose vein. (R.p. 341). At follow up appointments with Dr. Morrison and PA Englert in January 2011, Plaintiff reported swelling in her left lower extremity, especially in the afternoon. Examination showed mild edema from her left knee down and an anterior shin varicosity that was very phlebitic, while scans showed chronic common femoral vein and superficial venous phlebitic changes without fresh clot. Plaintiff was advised to continue to use compression stockings, to lose weight, and to exercise. (R.pp. 339-341, 347-357).

On May 30, 2012, Plaintiff was treated by Dr. Gretchen Meyer of Lowcountry Hematology and Oncology. Plaintiff reported she was on chronic anticoagulation medication and that she was having continued difficulty with pain and swelling in her legs following a recent pregnancy (she had given birth in January 2012). Plaintiff was noted to weigh 329 pounds, and examination revealed that her left leg was slightly larger than the right and that she had trace bilateral lower extremity edema. An ultrasound showed chronic deep vein thrombus in the left common femoral, left sapheous femoral junction, left femoral, and left popliteal veins. Dr. Meyer's impression was left lower extremity deep venous thrombus/pulmonary embolism in 2006 while on birth control medication, history of iron deficiency, and chronic thrombosis of her left lower leg. She advised



Plaintiff to continue with indefinite anticoagulation medication secondary to her obesity, decreased mobility, and chronic thrombosis. (R.pp. 305-306).

Plaintiff began care with Dr. Noemi Pagan at Moncks Corner Primary Care on November 5, 2012. Plaintiff reported that she was on Coumadin for a history of DVT and pulmonary embolism, that she had chronic pain and swelling in her leg, and had anxiety and panic attacks which had worsened. She also said she had a video game/dancing program and had lost weight. Dr. Pagan assessed Plaintiff with pulmonary embolism, DVT in her leg, back pain, leg pain, morbid obesity, and depression with anxiety. Zoloft was prescribed for Plaintiff's depression with anxiety. (R.pp. 264-265).

On March 20, 2013, Plaintiff reported to Dr. Meyer that she had pain in her left lower leg, especially if she was on her feet for a long period, but that she had improvement with elevation. Dr. Meyer continued Plaintiff's Coumadin and directed her to continue with elevation and compression stockings. (R.pp. 299-300). On June 26, 2013, Plaintiff complained that her legs still hurt. However, on examination Plaintiff was able to move all of her extremities without difficulty with full range of motion and normal strength. Dr. Meyer noted that Plaintiff had trace bilateral lower extremity edema, that her left leg was still slightly larger than her right leg, and that her DVT symptoms were fairly stable. (R.pp. 296-297).

On July 6, 2013, Plaintiff was treated at the Summerville Medical Center for complaints of lower lumbar pain with radiation into her right leg after a possible twisting injury. On examination Plaintiff complained of mild lower right lumbar tenderness to palpation into the right sciatic notch. A lumbar spine x-ray was negative, with congenital variation and mild dextrorotary scoliotic curve at L4-5 lower lumbar spinal curvature noted. An ultrasound of her right leg was also



negative for DVT.  Plaintiff was assessed with an acute lumbar strain/pain and acute right sciatica. (R.pp. 277-283, 290-291).

On August 7, 2013, Plaintiff complained to Dr. Meyer of nausea from the iron she was taking for anemia and about chronic leg pain and swelling that worsened throughout the day despite use of compression stockings.  On examination Dr. Meyer found no pitting edema in Plaintiff's lower legs, but she complained of tenderness to palpation of her left leg.  Dr. Meyer also noted that Plaintiff had ongoing DVT symptoms with chronic venous stasis changes.  Even so, Dr. Meyer noted that Plaintiff could move all of her extremities without difficulty, and that she had full range of motion and normal strength.  Plaintiff's schedule IV iron treatment was cancelled because Plaintiff was unable to get a babysitter for her children that day.  The plan was for Plaintiff to continue compression stockings and elevation and to administer IV iron. (R.pp. 293-294).

Plaintiff returned to Dr. Morrison at Coastal on September 24, 2013 for a recently emerged large vein on her left ankle.  Dr. Morrison noted that Plaintiff had left leg swelling from the thigh down that appeared to be somewhat chronic with palpable large veins, and ultrasounds were ordered.  He suspected that Plaintiff's significant weight gain and inactivity was causing venous reflux, and advised Plaintiff to lose weight.  (R.pp. 334-335).  On October 30, 2013, Dr. Meyer's examination showed fullness in Plaintiff's left leg compared to the right, but no pitting edema.  She continued to be able to move all of her extremities without difficulty with full range of motion, and she was noted to have normal strength.  Dr. Meyer wrote that Plaintiff had chronic leg pain with minimal swelling and chronic venous stasis changes, and recommended that Plaintiff continue with stockings and anticoagulation secondary to chronic thrombotic changes, obesity, and decreased mobility.  (R.pp. 324-325).



On November 1, 2013, Plaintiff complained to PA Linda Watson at Coastal about bilateral aching, throbbing, and edema in her legs which was greater on the left. Examination showed 1+ left leg edema. An ultrasound of Plaintiff's right lower extremity was positive for great saphenous vein (GSV) reflux, and a left lower extremity ultrasound was positive for accessory reflux with no evidence of GSV, negative for small saphenous vein reflux, negative for right lower extremity DVT, and negative for chronic thrombus in the left common femoral vein. PA Watson assessed Plaintiff with a history of DVT and venous stasis disease and recommended continued Coumadin and conservative treatment with elevation, non-steroidal anti-inflammatory medications, increased walking, and daily stocking use. (R.pp. 330-331, 336-338).

On November 5, 2013, state agency physician Dr. Cleve Hutson opined after a review of Plaintiff's records that Plaintiff could perform a range of light work,[3] limited to no climbing of ladders, ropes, and scaffolds; frequent stooping; only occasional kneeling, crouching, crawling, and climbing of ramps and stairs; and avoidance of concentrated exposure to hazards. (R.pp. 88-90).

On April 9, 2014, Plaintiff was evaluated for possible gastric bypass surgery. Dr. Charles K. Mitchell noted that Plaintiff's left leg was larger than her right leg, which was presumably due to postphlebitic syndrome, but that she ambulated with a normal gait without assistance from a cane or walker and had normal strength and range of motion in all of her extremities. (R.pp. 387-390).

---

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



On July 9, 2014, a few days after Plaintiff's deligibility for disability benefits expired on June 30, 2014, Dr. Thaddeus Bell performed a consultative examination. Plaintiff reported to Dr. Bell that she had a blood clot disorder, left leg damage, history of anxiety, history of anemia, and a history of weakness in her left leg. Plaintiff complained of pain in her left leg, of not being able to be as mobile as she had been since her pulmonary embolism diagnosis, and of experiencing swelling in her leg with ambulation and standing for long periods. Plaintiff stated that she had not worked in several months, and that she was applying for disability because of significant leg swelling that occurred mostly when she ambulated and stood for long periods of time. Even so, Plaintiff's musculoskeletal exam was completely normal with the exception that Plaintiff's left leg was somewhat impaired and she was unable to lift her left leg with straight leg testing on the left. Plaintiff's muscle strength was noted to be 5/5 (full) in all extremities, and there was no evidence of muscle atrophy. Dr. Bell opined that Plaintiff had obvious risk factors for continued problems with DVT, with obesity being a major issue, and thought that she needed lifetime treatment with Coumadin based on her being significantly overweight (322 pounds). (R.pp. 366-368).

On July 11, 2014, state agency physician Dr. Stephen Wissman opined after a review of Plaintiff's records that she could occasionally lift and/or carry twenty pounds; frequently lift and or carry up to ten pounds; and stand and/or walk for a total of two hours and sit for a total of about six hours in an eight-hour workday. Dr. Wissman thought that Plaintiff should never climb ladders, ropes, and scaffolds; only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and avoid concentrated exposure to hazards. (R.pp. 103-106).

On September 16, 2014, Plaintiff reported to PA Brandy Price at Coastal that she had no pain in her limbs, although she continued to have swelling. Examination showed only mild edema



in Plaintiff's lower legs. She was encouraged to get a new pair of compression hose and to continue to elevate her legs. (R.pp. 371-372).

On November 9, 2015 (now more than a year after Plaintiff's date last insured), Plaintiff reported to Dr. Meyer that her leg still hurt and that she had been hospitalized in October for a recurrence of DVT in her left lower extremity. Dr. Meyer noted that Plaintiff had fullness in her left leg, but no pitting edema. The plan was for Plaintiff to continue to take anticoagulant medication and to use rest and elevation in the evenings. Dr. Meyer also prescribed Plaintiff a cane to help with walking long distances. (R.pp. 458-459).

**Discussion**

Plaintiff, who was twenty-seven years old on her alleged disability onset date, and thirty-one years old on her date last insured for DIB, has a twelfth grade education (plus two years of college) and past relevant work experience as a machine operator, store laborer, sales clerk, and general inspector. (R.pp. 33, 44, 172, 199). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months.

After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[4] of DVT and obesity (R.p. 29), she

---

[4]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).



nevertheless retained the residual functional capacity (RFC) to perform sedentary work[5] with limitations that she only occasionally balance, stoop, crouch, kneel, and climb stairs and ramps; never climb ladders, ropes, and scaffolds; must avoid all exposure to unprotected heights; and must use a hand-held assistive device for uneven terrain or prolonged ambulation. (R.p. 30). At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work with these limitations. (R.p. 33). However, the ALJ obtained testimony from a vocational expert (VE) and found at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy with her limitations, and thus was not disabled during the time period at issue. (R.pp. 33-34).

Plaintiff asserts that the ALJ's analysis of her RFC, credibility, and the opinion evidence from her treating physician is not supported by substantial evidence, thereby requiring a reversal of the decision. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

## RFC

RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). In SSR 96-8p, RFC is defined as a function-by-function assessment of an individual's physical and mental capacities to do sustained, work-related physical

---

[5]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).



and mental activities in a work setting on a regular and continuing basis of eight hours per day, five days per week, or the equivalent. SSR 96-8p, 1996 WL 374184. Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence because the ALJ failed to consider whether she could perform work on a regular and continuous basis and failed to reconcile all of the evidence concerning her edema and pain. This argument is without merit.

An RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. at *7. Here, the ALJ properly evaluated Plaintiff's RFC by including in his decision a narrative discussion of the medical and nonmedical evidence leading to his conclusion that Plaintiff had the RFC to perform a limited range of sedentary work. (R.pp. 30-33). See Knox v. Astrue, 327 F. App'x 652, 657 (7th Cir. 2009) ["[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient"], citing Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Osgar v. Barnhart, No. 02–2552, 2004 WL 3751471, at *5 (D.S.C. Mar. 29, 2004). In doing so, the ALJ discussed Plaintiff's impairments and specifically explained why, in determining Plaintiff's RFC, he did not credit the contradictory evidence in the record, including opinion evidence. Lyall v. Chater, No. 94-2395, 1995 WL 417654, at * 1 (4th Cir. 1995)[Finding no error where the ALJ's analysis "was sufficiently comprehensive as to permit appellate review"]. After careful review, the undersigned can discern no reversible error in the ALJ's review and consideration of this evidence in determining Plaintiff's RFC. Thomas v. Celebreeze, 331 F.2d 541, 543 (1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational].



11

Plaintiff initially argues that the ALJ erred in failing to reconcile findings in the record that she had swelling and tenderness, and her testimony (R.pp. 46, 49) that she had to elevate her legs above heart level whenever she was sitting.[6] However, during the period from Plantiff's alleged onset date of disability (June 2010) through March 2013, her medical records do not contain directions from her medical providers that Plaintiff needed to elevate her legs. See (R.pp. 258-266, 302-306, 339-345). On March 20, 2013, Dr. Meyer noted that Plaintiff complained about pain in her left lower leg, especially when she was on her feet for a long period of time, but that the pain improved when she elevated it. In the "Plan" section of his treatment notes for that visit, Dr. Meyer then wrote that Plaintiff "will continue with elevation and compression stockings." (R.pp. 299-300). Thereafter, a couple of the "Plan" notes from Dr. Meyer again include statements that Plaintiff would continue "elevation" (R.pp. 294, 297). However, these records also all indicate that Plaintiff had no focal deficits, that she could move all of her extremities without difficulty, and that she had full range of motion in her extremities with normal strength. On November 9, 2015 (well after Plaintiff's eligibility for DIB had expired), Dr. Meyer noted that Plaintiff had been hospitalized in October 2015 for a recurrent DVT (see R.p. 434) and that Plaintiff should "rest and [use] elevation *in the evenings*."[7] (R.p. 459) (emphasis added). Moreover, in a Medical Source Statement completed on November 15, 2015 (discussed further below), Dr. Meyer makes no mention of any need for Plaintiff to elevate her leg. (R.pp. 382-386).

---

[6]At the hearing, the VE testified that if the claimant had to elevate her legs for more than four hours a day during the workday it would eliminate competitive employment. (R.p. 53).

[7]It is noted that during this November 9, 2015 examination, Dr. Meyer also continued to find (as she had previously) that Plaintiff had full range of motion and normal strength, and that she was able to move all of her extremities without difficulty. (R.p. 459).



Additionally, although the majority of the medical notes of record from prior to November 2015 (discussed further below) note the use of compression stockings, they do not include any recommendation that Plaintiff elevate her leg. (R.pp. 325, 444, 447, 450, 453, 456). While, on a couple of occasions, providers at Coastal recommended or encouraged both the use of compression stockings and elevation (R.pp. 331, 371), other notes from this time period only reference a need for increased walking, use of compression stockings, approval of the use of physical therapy, and weight loss. (R.pp. 335, 373). There is also no indication in the medical records prior to Plaintiff's date last insured of how often, how long, or to what height Plaintiff was to elevate her leg(s), if she was to do so (Plaintiff testified at the hearing that she had to elevate her legs above her heart level whenever she was sitting). Nor do the treatment notes contain any consistent reports of more than trace edema. In fact, most treatment notes reflect either no signs of edema (R.pp. 258, 260, 264, 273, 293, 324, 334, 373, 446, 449, 452, 459) or only a trace of edema (R.pp. 296, 299, 305, 330), with mild edema noted in January 2011 (R.p. 339) and September 2014 (R.p. 371 - a few months *after* Plaintiff's date last insured).

The exertional and postural limitations reflected in the ALJ's RFC determination are also supported by the state agency medical consultants' assessments, to which the ALJ gave some weight. (R.p. 33, see R.pp. 88-90, 103-106). See Johnson v. Barnhardt, 434 F.3d 650, 657 (4th Cir. 2005)[ALJ can give significant weight to opinion of medical expert who has thoroughly reviewed the record]; see also Ponder v. Colvin, 770 F.3d 1190, 1195 (8th Cir. 2014) [noting that opinions from state agency consultants may be entitled to even greater weight than the opinions of treating or examining sources]. Indeed, it is readily apparent that the ALJ gave Plaintiff every benefit of the doubt in determining her RFC, as the ALJ found that the record supported greater limitations than



opined to by these physicians, including limiting Plaintiff to sedentary work and including a limitation that she must use a hand held assistive device for uneven terrain or pronged ambulation. (R.p. 30). See Marquez v. Astrue, No. 08–206, 2009 WL 3063106, at *4 (C.D.Cal. Sept. 21, 2006)[No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner]; see also Siler v. Colvin, No. 11-303, 2014 WL 4160009, at * 5 (M.D.N.C. Aug. 19, 2014) [same]; cf. Muir v. Astrue, No. 07-727, 2009 WL 799459, at * 6 (M.D.Fla. Mar. 24, 2009)[No error where ALJ gave Plaintiff even a more restrictive RFC than the medical records provided].

In arguing for a reversal of the decision, Plaintiff also complains that the ALJ did not discuss all of her medical appointments. However, that is not a basis on which to reverse the decision in this case. The fact that every one of Plaintiff's medical records were not specifically mentioned in the decision does not mean the ALJ's analysis is deficient. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) [stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"]. Rather, an ALJ "need only 'minimally articulate' his reasoning so as to 'make a bridge' between the evidence and his conclusions." Jackson v. Astrue, C.A. No. 8:08–cv–2855, 2010 WL 500449, at *10 (D.S.C. Feb. 5, 2010) (quoting Fischer v. Barnhart, 129 F. App'x 297, 303 (7th Cir. 2005)). "The touchstone for determining what evidence must be addressed is whether the evidence is so material that failing to address it would prevent the court from determining if the ALJ's decision was supported by substantial evidence." Woodbury v. Colvin, No. 9:15-CV-2635-DCN, 2016 WL 5539525, at *3 (D.S.C. Sept. 30, 2016); see also Bowen Transp. Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285–86 (1974) [stating that "[w]hile [the court] may not supply a reasoned basis for the agency's action that the agency itself has not given, ... [the



court] will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."]. A review of the decision confirms that the ALJ adequately discussed and addressed the evidence in this case.

While Plaintiff argues that the evidence could support a different finding; see Plaintiff's Brief, ECF No. 13 at 8-11; the duty to consider the evidence and resolve any conflicts in that evidence rests with the ALJ: not with the Plaintiff, and not with this Court. Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; see also Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 3 (S.D.Ohio Nov. 15, 2011), adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012). This Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; see also Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"]. As such, although Plaintiff disagrees with the ALJ's RFC finding,

> "the determination of a claimant's RFC is ultimately the province of the ALJ as the representative of the Commissioner." McPherson v. Astrue, 605 F. Supp. 2d 744, 755 (S.D.W.Va. 2009) (citing 20 C.F.R. § 404.1527(e)(2)); see also Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)." "The reviewing court's sole responsibility is to determine whether the ALJ's determination of the claimant's RFC is rational and based on substantial evidence." Id. (citing Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974)).

Smith-Williams v. Berryhill, No. 16-03556, 2017 WL 1284961, at *9 (S.D.W.Va. Mar. 6, 2017), adopted by, 2017 WL 1281147 (S.D.W.Va. Apr. 4, 2017).



The record and evidence set forth hereinabove shows that the ALJ's RFC determination is this case is rational and based on substantial evidence. Hays, 907 F.2d at 1456 [If there is evidence to justify refusal to direct a verdict where the case before a jury, then there is 'substantial evidence']. Therefore, this claim is without merit.

### Subjective Complaints

Plaintiff also argues that the ALJ's analysis of her subjective complaints is not supported by substantial evidence because the treatment notes support her complaints and the ALJ failed to build a logical bridge between the facts he relied upon and his conclusions. However, the Commissioner contends that substantial evidence supports the ALJ's subjective evidence findings, and the undersigned agrees.

An ALJ is required to compare a claimant's alleged functional limitations to the evidence and to explain his reasons for accepting or rejecting them. See Mascio v. Colvin, 780 F.3d 632, 639–40 (4th Cir. 2015). In compliance with this requirement, the ALJ set forth in his decision the two-step process for determining credibility, and noted the proper factors to be considered in determining credibility. (R.p. 30). He then found that although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible for the reasons explained in his decision. (R.p. 32). This was the proper analytical framework for the ALJ to follow. Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) ["What we require is that the ALJ sufficiently articulate her assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; see 20 C.F.R. §§ 404.1529(b)-(c); see also SSR 96–7p, 1996 WL 374186, at *2 [Where a claimant seeks to rely on



subjective evidence to prove the severity of her symptoms, the ALJ "must make a finding on the credibility of the individual's statements, based on a consideration of the entire case record."];[8] cf. Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].

In making his findings, the ALJ noted Plaintiff's testimony from the hearing, including her statements that she had to elevate her legs above her heart, that her mother did everything for her, that her mother helps her bathe, and that she was not able to care for her children, but then found that Plaintiff's objective examination results, conservative treatment, and own statement as late as April 2015 that she had no problems and was doing well were not fully consistent with the alleged severity of her limitations. (See R.pp. 31-32). With respect to Plaintiff's "elevation" argument, Plaintiff's testimony as to her need to elevate her legs above her heart is not consistent with the medical record during the time prior to her date last insured, nor is there any notation in the record concerning Plaintiff being limited as to her activities of daily living. To the contrary, numerous treatment notes from her medical providers recommend that Plaintiff walk or do other exercise, while further noting that she was consistently able to move her extremities without difficulty, had full strength in her extremities, and full range of motion. Moreover, as noted and discussed above, Plaintiff's

---

[8]Subsequent to the ALJ's decision in this case, the Social Security Administration superseded SSR 96-7p with SSR 16-3p. See 2016 WL 1119029 (Mar. 16, 2016). Social Security Ruling 16-3p eliminates the use of the term " 'credibility' from ... sub-regulatory policy" and "clarif[ies] that subjective symptom evaluation is not an examination of an individual's character." Id. at *1. However, because SSR 96-7p was in effect at the time of ALJ's decision, the Court has reviewed the decision under SSR 96-7p. See Keefer v. Colvin, No. 1:15-4738-SVH, 2016 WL 5539516, at *11 n.5 (D.S.C. Sept. 30, 2016). In any event, while SSR 16-3p eliminates the assessment of credibility, it still requires assessment of most of the same factors to be considered under SSR 96-7p.



impairments were treated conservatively during this time period. Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)[generally conservative treatment not consistent with allegations of disability]. Even so, although discounting Plaintiff's subjective complaints as to the severity of her condition after considering this evidence, the ALJ nonetheless limited her to performing no more than a limited range of sedentary work with additional limitations for the reasons stated in the decision. (R.p. 30). Again, the undersigned can discern nothing improper or reversible in how the ALJ handled this evidence. See Poling v. Halter, No. Civ.A. 1:00CV40, 2001 WL 34630642, at * 7 (N.D.W.Va. Mar. 29, 2001) ["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"]; see also Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003)[Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints]; Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating a plaintiff's subjective complaints]; cf. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may consider whether claimant's activities are consistent with allegations].

As previously stated, this Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence. Smith v. Chater, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]. Based on the record and evidence, the undersigned does not find that the ALJ conducted an improper analysis of Plaintiff's subjective complaints in reaching her conclusions, or that the decision otherwise reflects a failure to properly consider the record and evidence in this case. Bowen, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that he has a disabling impairment]; see also Guthrie, 2011 WL 7583572, at * 3, adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even



where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; Kellough v. Heckler, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)].  Therefore, Plaintiff's argument concerning her subjective complaints is without merit.

### Treating Physician Opinion

Finally, Plaintiff contends that the ALJ erred in evaluating the opinion evidence of Dr. Meyer, her treating physician. On November 12, 2015, Dr. Meyer completed a physician statement in which she opined that in an eight-hour day, Plaintiff could sit for four hours, stand for two hours, and walk for three hours due to chronic leg pain and swelling; frequently lift up to ten pounds and occasionally lift up to fifty pounds with limitations based on her not being strong enough to lift heavy loads; occasionally carry only up to twenty pounds due to chronic leg pain and weakness; and could sit for less than one hour and stand less than one hour before needing to periodically alternate sitting, standing, or walking.  Dr. Meyer thought that Plaintiff could not squat, crouch, or kneel; could occasionally bend, crawl, climb, and stoop; and could frequently reach above.  Dr. Meyer found no limitations as to Plaintiff's ability to use her hands for repetitive actions such as simple grasping, pushing and pulling, and fine manipulation; and thought she did not have difficulty with dealing with moderate levels of stress.  Finally, Dr. Meyer anticipated that Plaintiff's impairments would cause her to be absent from work four or more times a month.  (R.pp. 382-386).

A treating physician's opinion is ordinarily entitled to great weight; see Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996)[Noting importance of treating physician opinion]; is



entitled to deference, and must be weighed using all of the factors provided for in 20 C.F.R. § 404.1527. See SSR 96-2p.[9] Under these regulations, a treating source's opinion on the nature and severity of an impairment is entitled to "controlling weight" where it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. Further, the ALJ is required to provide an explanation in the decision for what weight is given a treating source's opinion and, if rejected, why it was rejected. See 20 C.F.R. § 404.1527(c).

Here, in determining what weight to give to Dr. Meyer's opinion, the ALJ properly considered *all* of the evidence before him, including Dr. Meyer's own treatment notes and opinions, the findings of other treating and examining medical personnel, and the opinions of the state agency consultants, in reaching his decision. (R.pp. 31-33). That is exactly what the ALJ was supposed to do; Mickles v. Shalala, 29 F.3d at 925-926 [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Carlson, 999 F.2d at 181 ["What we require is that the ALJ sufficiently articulate her assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; and the undersigned can discern no reversible error in the ALJ's treatment and consideration of this evidence. See Thomas, 331 F.2d at

---

[9]It is noted that for claims filed after March 27, 2017, the regulations have been amended, and that several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c (2017). However, the claim and ruling in the present case were filed before March 27, 2017, and Plaintiff's claim has therefore been analyzed pursuant to the treating physician rule set out above. As such, references in this report and recommendation are to the prior versions of the regulations in effect at the time of the ALJ's decision, unless otherwise specified.



543 (1964) [courts should scrutinize the record as a whole to determine whether the conclusions reached are rational]; see also Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; Johnson, 434 F.3d at 657 ["In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence."].

The ALJ gave Dr. Meyer's opinion little weight for the relevant period, finding (in part) that it was not consistent with this physician's own treatment notes. Indeed, a review of Dr. Meyer's treatment notes shows only conservative treatment of Plaintiff's symptoms with few notations to support the extent of limitation noted in Dr. Meyer's November 2015 opinion. Further, as noted by the ALJ, Dr. Meyer provided no explanation for his statement that Plaintiff would be absent from work more than four days per month due to her impairments. (R.pp. 33, 384). In discounting Dr. Meyer's opinion, the ALJ also found that the time period assessed by Dr. Meyer was unclear. While the form completed by Dr. Meyer requests that the physician provide her opinion of how Plaintiff's physical capabilities were affected by her impairments prior to June 30, 2014 (R.p. 382), there is no indication as to the earliest date to which the opinion applies, nor is there any indication whether the opinion relates to a continuous time period of at least twelve months. In any event, as noted above, the restrictions in this opinion are not supported by Dr. Meyer's own medical notes and findings from prior to June 30, 2014.

Additionally, the ALJ's decision to discount Dr. Meyer's opinion is also supported by the findings of the state agency physicians that Plaintiff was capable of performing a range of sedentary to light work, as discussed above, as well as by the consultative examination of Dr. Bell, who found that Plaintiff had no atrophy and 5/5 muscle strength, and in which Dr. Bell expressed no limitations on Plaintiff's ability to perform work. See Smith v. Schweiker, 795 F.2d 343, 345 (4th



Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner]; Ponder, 770 F.3d at 1195 [noting that opinions from state agency consultants may be entitled to even greater weight than the opinions of treating or examining sources]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [Assessments of examining physicians may constitute substantial evidence in support of a finding of non-disability].

Therefore, the decision does not reflect that the ALJ improperly considered and analyzed the opinion of treating physician Dr. Meyer in conjunction with the record and evidence in this case as a whole. Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted)]; Bowen, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that he has a disabling impairment]; see also Guthrie, 2011 WL 7583572, at * 3 [Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]. Plaintiff simply disagrees with the ALJ's findings and asks this court to reweigh evidence. However, that is not the province of this court. See Johnson, 434 F.3d at 653 [a reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ].

In sum, after careful review of the record, the undersigned can find no reversible error in the ALJ's treatment of the opinion of Plaintiff's treating physician (Dr. Meyer). It is not the role of this court to disturb the ALJ's determination as to the weight to be assigned to a medical source opinion "absent some indication that the ALJ has dredged up 'specious inconsistencies,' Scivally v. Sullivan, 966 F.2d 1070, 1077 (7th Cir. 1992), or has not given good reason for the weight afforded



a particular opinion." Craft v. Apfel, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam). Here, as discussed above, the ALJ provided good reasons for the weight she afforded to the opinion of treating physician Dr. Meyer, and there is no indication that the ALJ dredged up "specious inconsistencies" to discount this opinion. Plaintiff's argument that the decision in this case should be reversed due to an improper evaluation of the opinion evidence is without merit. Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; Poling, 2001 WL 34630642, at * 7 ["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"].

### Conclusion

Substantial evidence is defined as "... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.



23

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 24, 2018
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).