IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| KARLETTA VIRGINIA MOOD, ) | |
| ) | |
| Plaintiff, ) | No. 9:17-cv-1799-DCN |
| vs. ) | |
| ) | **ORDER** |
| NANCY A. BERRYHILL, *Acting* ) | |
| *Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the court on United States Magistrate Judge Bristow Marchant's Report and Recommendation ("R&R") that this court affirm Acting Commissioner of Social Security Nancy A. Berryhill's ("the Commissioner") decision denying plaintiff Karletta Virginia Mood's ("Mood") application for disability insurance benefits ("DIB"). Mood filed objections to the R&R. For the reasons set forth below, the court rejects the R&R, reverses the Commissioner's decision, and remands for further administrative proceedings.

## I. BACKGROUND

Unless otherwise noted, the following background is drawn from the R&R.

### A. Procedural History

On August 29, 2013, Mood filed an application for DIB in which she alleged her disability began on June 30, 2010.[1] The Social Security Agency denied Mood's claim

---

[1] Mood was previously awarded a closed period of benefits from August 5, 2008 to January 12, 2010. As of January 12, 2010, Mood was found to be capable of performing a full range of sedentary work and therefore no longer entitled to disability benefits. Mood's current application seeks new benefits based on Mood becoming disabled again.

1

initially and on reconsideration. Mood requested a hearing before an administrative law judge ("ALJ"), and ALJ Marcus Christ held a hearing on November 23, 2015.

The ALJ issued a decision on January 28, 2016, finding that Mood was not disabled under the Social Security Act. The Appeals Council denied Mood's request for review, rendering the ALJ's decision the final action of the Commissioner. On July 10, 2017, Mood filed this action seeking review of the ALJ's decision. The magistrate judge issued an R&R on August 24, 2018, recommending that this court affirm the ALJ's decision. Mood filed objections to the R&R on September 6, 2018, and the Commissioner responded to Mood's objections on September 20, 2018. The matter is now ripe for the court's review.

**B.     Medical History**

Because Mood's medical history is not directly at issue here, the court dispenses with a lengthy recitation thereof and instead notes a few relevant facts. Mood was born on December 8, 1982 and was 27 years old at the time of her alleged disability onset date. She communicates in English and has a high school education plus two years of college education. Her past relevant work experience was as a machine operator, store laborer, sales clerk, and general inspector.

**C.     ALJ's Findings**

The ALJ employed the statutorily-required five-step sequential evaluation process to determine whether Mood was disabled from June 30, 2010 through the date last insured, June 30, 2014. The ALJ first determined that Mood did not engage in substantial gainful activity during the period at issue. Tr. 29. At the second step, the ALJ found that Mood suffered from the following severe impairments: deep venous thrombosis and

obesity.  Id.  At step three, the ALJ found that Mood's impairments or combination of impairments did not meet or equal one of the listed impairments in the Agency's Listings of Impairments ("the Listings").  Id.; see 20 C.F.R. Part 404, Subpart P, App'x 1.

Before reaching the fourth step, the ALJ determined Mood had the residual function capacity ("RFC") to perform sedentary work with several limitations.  Tr. 30–33.  Specifically, the ALJ found that Mood could only engage in sedentary work without climbing ladders, ropes, or scaffolds; she could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; she needed to avoid working at unprotected heights; and she needed to use a hand held assistive device for uneven terrain or prolonged ambulation.  Id.  The ALJ found at step four that Mood was not capable of performing past relevant work as a machine operator, store laborer, sales clerk, or general inspector.  Tr. 33.  Finally, at step five, the ALJ determined that, considering Mood's age, education, work experience, and RFC, she could perform jobs existing in significant numbers in the national economy, and concluded that she was not disabled during the period in issue.  Tr. 33–34.

## II.  STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).  The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

3

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

### III.  DISCUSSION

Mood objects to the R&R on three grounds, arguing that the magistrate judge erred in finding that: (1) the ALJ properly explained why he failed to credit contradictory evidence while determining Mood's RFC; (2) the ALJ properly assessed Mood's credibility; and (3) the ALJ properly followed the treating physician rule when affording little weight to the opinion of Mood's treating physician, Dr. Gretchen Meyer ("Dr. Meyer"). The court finds that remand is appropriate because the ALJ did not properly assess Dr. Meyer's opinion. The court refrains from addressing Mood's objections about the ALJ's RFC determination or credibility assessment.

Mood objects to the little weight the ALJ gave to the opinion of Dr. Meyer, Mood's treating physician. ECF No. 17 at 5. Mood first argues that the ALJ improperly afforded Dr. Meyer's opinion little weight on the basis that the time period during which Dr. Meyer assessed Mood was unclear. Id. Mood explains that Dr. Meyer specifically stated that the time period considered in her assessment was on or before June 30, 2014, but that if the ALJ thought this was unclear, he had the obligation to request clarification from Dr. Meyer. Id. at 5–6. Next Mood argues that Dr. Meyer's opinion should have been given the controlling weight of a treating physician's opinion because Dr. Meyer has a long treating relationship with Mood and is a specialist in hematology and oncology. Id. at 6.

The Social Security Administration typically gives greater weight to the opinion of a treating physician because a treating physician is best able to provide a "detailed, longitudinal picture" of the claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). The treating physician's opinion will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Id. "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In such a circumstance, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

If a treating physician's opinion does not merit controlling weight, the ALJ is to evaluate the opinion using the following factors: (1) whether the physician has examined

the applicant; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the extent to which the opinion is consistent with the record as a whole; (5) the relevance of the physician's medical specialization to the opinion; and (6) any other factor that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(c); Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). However, the Fourth Circuit has not mandated an express discussion of each factor, and another court in this district has held that "an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision." Hendrix v. Astrue, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010); see § 404.1527(c)(2) (requiring ALJ to give "good reasons" for weight given to treating physician's opinion).

Dr. Meyer provided a statement on November 12, 2015 in which she opined on Mood's functional limitations. Tr. 382–86. Dr. Meyer indicated that Mood could sit for four hours, stand for two hours, and walk for three hours due to her chronic leg pain and swelling. Tr. 382. She also opined that Mood could occasionally carry up to 20 pounds because of her chronic leg pain and weakness. Tr. 383. Dr. Meyer indicated that Mood could use her hands for various repetitive actions, and Dr. Meyer anticipated that Mood's impairments would cause Mood to be absent from work four or more times a month. Tr. 384. Moreover, Dr. Meyer indicated that limitations on Mood's ability to move in various ways were caused by leg pain and swelling. Tr. 384–85. Dr. Meyer also stated that an objective sign of Mood's pain included swelling in her left leg, and Mood's pain medication caused drowsiness, nausea, impaired concentration, and risk of bleeding. Tr. 385.

6

After the ALJ summarized Dr. Meyer's opinion, he briefly evaluated the opinion, stating:

> This opinion is given little weight for the relevant period, as it is not consistent with the doctor's treatment notes or the other medical evidence of record. As noted previously, the claimant has been treated conservatively, and there is no indication that the claimant reported experiencing any significant side effects. In addition, the doctor did not provide any rationale for the expectation that the claimant would be absent from work more than four days per month due to her impairments (Exhibit 8F). The time period assessed by Dr. Meyer is unclear, as the claimant's insured status expired in June 2014, and the claimant subsequently was treated for DVT.

Tr. 33.

The ALJ's analysis does not demonstrate that he adequately considered the factors under 20 C.F.R. § 404.1527(c). First, the ALJ does not address the nature and extent of the treating relationship between Dr. Meyer and Mood despite the fact that Dr. Meyer has treated Mood since May 2012. Cf. Burch v. Apfel, 9 F. App'x 255, 259 (4th Cir. 2001) (finding adequate discussion of treating physician factors in part because "the ALJ observed that Dr. Murphy began treating Burch in 1992 and that Burch was still under her care at the time of the hearing"); Hooks v. Astrue, 2012 WL 2873944, at *9 (D. Md. July 12, 2012) (finding adequate discussion of treating physician factors in part because "the ALJ noted that Dr. Fox began his treatment of plaintiff on October 18, 2005" and referenced "Dr. Fox's continued care and examination" through September 17, 2008). Moreover, while the ALJ does cursorily mention that Dr. Meyer's opinion is not consistent with Dr. Meyer's treatment notes or the other medical evidence, he does not explain why they are inconsistent. Cf. Hooks, 2012 WL 2873944, at *9 (finding adequate discussion of treating physician factors in part because "the ALJ explicitly

delineated the extent to which Dr. Fox's opinion is supported and unsupported by the medical record as a whole").

Finally, it is unclear why the ALJ contends that "[t]he time period assessed by Dr. Meyer is unclear." Tr. 33. The form Dr. Meyer used to provide her opinion instructs the medical provider to "give us your opinion, <u>based on your examination</u>, of how your patient's physical capabilities are affected by his or her impairments <u>prior to June 30, 2014</u>." Tr. 382 (emphasis in original). These instructions make it clear that the time period of Dr. Meyer's assessment was prior to June 30, 2014, Mood's last insured date. The ALJ provides no reason as to why he believes Dr. Meyer did not follow this instruction. In addition, the ALJ questions the effect of the time period on Dr. Meyer's opinion because Mood "subsequently was treated for DVT" after June 2014, Tr. 33, but again, the instructions on Dr. Meyer's opinion make it clear that Dr. Meyer considered the time period before Mood was treated for DVT. While the ALJ was not required to discuss all of the factors under 20 C.F.R. § 404.1527(c), his lack of explanation as to why he did not afford Dr. Meyer's opinion the controlling weight of a treating physician makes it difficult to determine if the ALJ applied the factors in coming to his decision.

For the foregoing reasons, the court cannot conclude whether the ALJ's decision to afford Dr. Meyer's opinion little weight is supported by substantial evidence. Remand is therefore appropriate. On remand, the ALJ should consider the 20 C.F.R. § 404.1527(c) factors, citing specific reasons why Dr. Meyer's opinion should not be given the controlling weight of a treating physician's opinion. Because the ALJ's failure to properly assess Dr. Meyer's opinion is a sufficient basis for remand, the court will not

address Mood's other two objections to the R&R. However, when reviewing the case on remand, the ALJ should consider Mood's other allegations of error.

### IV. CONCLUSION

Based on the foregoing, the court **REJECTS** the R&R, **REVERSES** the Commissioner's decision, and **REMANDS** for further proceedings.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**November 19, 2018**
**Charleston, South Carolina**